UNITED STATES METAL COMPANY
EMPLOYEES' ASSOCIATION and
United States Metal Co., Plaintiffs,

v.

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS
BOARD, Defendant.

Civ. A. No. 79–1519.

United States District Court,
W. D. Pennsylvania.

Nov. 5, 1979.

W. Allen Dill, Fruit, Dill, Goodwin, Scholl, Sharon, Pa., for U.S. Metal Co. Employees' Assn.

Henry M. Ekker, Thomas W. Kuster, Cusick, Madden, Joyce & McKay, Sharon, Pa., for United States Metal Co.

William Bevan, Pittsburgh, Pa., for NLRB.

Howard Grossinger, Pittsburgh, Pa., for United Steelworkers of America.

## MEMORANDUM OPINION

COHILL, District Judge.

### Facts

On August 1, 1977, the United States Metal Company (hereinafter referred to as "the Company") and the employees at its Sharon facility entered into a three-year employment contract. Each of the Company's fifty employees signed the document. This contract explicitly states that the agreement is between the Company and "The Hourly Paid Employees, Individually." The document makes no reference to any union or workers' association.

On August 14, 1979, the United Steelworkers of America filed a petition, pursuant to section 9(c) of the National Labor Relations Act (hereinafter referred to as "the Act"), with the National Labor Relations Board (hereinafter referred to as "the NLRB") requesting that a representation election be held at the Company's Sharon plant. The NLRB promptly notified the Company of the petition and asked the Company to provide it with a copy of any existing collective bargaining agreement and the name of any labor organization that claimed to represent any of the employees in the proposed unit. At this time the Company did not identify any such labor organization. On August 21, 1979, the Company formally denied that the United Steelworkers of America (hereinafter referred to as "the Steelworkers") was an appropriate exclusive bargaining agent. The NLRB, on August 24, 1979, notified the Company that it would conduct a hearing on August 29, 1979 to determine whether a representation election should be held. Only the Company and the Steelworkers entered appearances at the hearing.

Upon the facts elicited at the hearing and under the principles established in *J. I. Case Company v. National Labor Relations Board*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944), the Regional Director concluded that the existing contract could not bar a representation election at the Sharon facility. As a result of this finding, the NLRB scheduled an election for October 24, 1979.

On September 20, 1979, a group entitled the United States Metal Company Employees' Association (hereinafter referred to as "the Association") filed with the NLRB a petition to intervene in the pre-election proceedings. Claiming that it now serves as the bargaining agent of the employees, the Association asserted that the NLRB should reconsider its decision to hold a representation election. Arguing that it had not received notice of the initial hearing, the Association requested that the NLRB conduct a second hearing at which the Association could present its position. Responding promptly, the Regional Director denied the petition to intervene. On October 23, 1979, the Washington office affirmed the Regional Director's decision.

In the wake of the NLRB's decision, the Association and the Company filed a complaint in this Court seeking a temporary restraining order and subsequent injunctive relief to prevent the NLRB from holding the representation election until it conducts another hearing at which the Association could enter an appearance. The Steelworkers intervened. Confronted with a complex factual situation, allegations involving the deprivation of important constitutional rights and an election scheduled to occur within six hours, this Court determined that the interests of justice would best be served by issuing the temporary restraining order.

At the same time, we scheduled a hearing on the propriety of a preliminary injunction for October 29, 1979.

*Subject Matter Jurisdiction*

Before a United States District Court may consider the merits of a claim, it must determine that it has subject matter jurisdiction over the case. The plaintiffs, alleging a denial of procedural due process, rest jurisdiction solely upon the Fourteenth Amendment. By its terms, the Fourteenth Amendment protects citizens from the actions of state governments rather than the federal government. In light of the liberal amendment provisions included in the Federal Rules of Civil Procedure, however, this Court does not rest its decision on this pleading error. Instead, this Court will proceed to examine the much more fundamental jurisdictional questions presented in the instant action.

The NLRB and the Steelworkers have argued strenuously that this Court lacks subject matter jurisdiction to issue any orders concerning a representation election or pre-election procedures. Congress did severely limit judicial jurisdiction in this area because it determined that "immediate review of Board representation decisions, especially prior to the conduct of an election, . . . would provide an opportunity for dilatory litigation and the frustration of the collective bargaining preferences of employees in the unit." R. Gorman, *Labor Law: Unionization and Collective Bargaining* § 10, at 60 (1976). The Supreme Court, interpreting the National Labor Relations Act, has stated that district courts may issue orders involving representation elections only in a very narrow range of circumstances. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).

One set of circumstances justifying district court jurisdiction-intervention arose in *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). *McCulloch* resulted from an attempt by the NLRB to assert jurisdiction over the crew of a foreign flag-ship that was owned by a foreign subsidiary of an American corporation. The crew was composed primarily of foreign nationals. Both the employer and the foreign labor organization that already represented the crew sought to enjoin the NLRB from conducting a representation election. A district court, finding that it had jurisdiction, issued an injunction. The Supreme Court affirmed, stating: "[T]he presence of public questions particularly high in the scale of our national interest because of their international complexion is a uniquely compelling justification for prompt judicial resolution of the controversy over the Board's power." *Id.* at 17, 83 S.Ct. at 675. The *McCulloch* exception does not apply to the present case, which has no international overtones.

Only one other time has the Supreme Court upheld district court jurisdiction over a case involving a representation election. In *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Court held that a district court may assert jurisdiction when the NLRB has acted in express contravention of the National Labor Relations Act, and thus has roamed beyond the scope of the authority delegated to the NLRB by Congress. The only provision in the present case that the NLRB arguably violated is the clause in section 9(c)(1) of the Act that requires the NLRB to conduct "an appropriate hearing upon due notice." In *National Maritime Union of America, AFL–CIO v. National Labor Relations Board*, 375 F.Supp. 421 (E.D.Pa.), aff'd mem., 506 F.2d 1052 (3d Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975), the district court held "that the provisions of § 9(c)(1) are *not* sufficiently 'clear and mandatory' to fall within the exception engrafted by *Leedom v. Kyne* because of the discretion and leeway vested in the Board in representation proceedings, and judicial and Congressional approval of the exercise of that discretion." 375 F.Supp. at 432 (emphasis in original). This Court agrees.

The Second Circuit, without any endorsement from the Supreme Court, has recognized a third exception to the general rule

that district courts do not have jurisdiction over cases arising from NLRB-conducted representation elections. In *Fay v. Douds*, 172 F.2d 720, 723 (2d Cir. 1949), the Second Circuit held that the district court did have jurisdiction to entertain an action involving a non-frivolous claim that the NLRB had violated a constitutional right. *Fay v. Douds* involved a dispute between two unions over the representation of employees in a bargaining unit. The Regional Director ruled that Local 475 had not complied with certain provisions of the Act, and therefore lacked the status necessary to object to a consent election. Both the Regional Director and the NRLB rejected the Local's protest of this ruling without a hearing. The election was subsequently held, using a ballot that contained only the name of the Automobile Workers' Union. That union received a majority of the votes cast, and thereupon was certified as the exclusive bargaining representative. Local 475 brought suit in federal district court, which dismissed the complaint. The Second Circuit affirmed on the merits, but held that the district court did have subject matter jurisdiction to hear the suit.

The present case has much in common with *Fay v. Douds*, and the Second Circuit might well find that a district court could assume jurisdiction over the instant action. The Third Circuit, however, has not accepted the *Fay v. Douds* exception to the general rule. Without expressly discussing *Fay v. Douds*, the Third Circuit in *The Firestone Tire & Rubber Co. v. Samoff*, 365 F.2d 625 (3d Cir. 1966), stated: "The question whether the Constitution required it is not of itself grounds for jurisdiction in the district court." *Id.* at 628. Other circuits have explicitly questioned the validity of *Fay v. Douds. See J. P. Stevens Employees Educational Committee v. National Labor Relations Board*, 582 F.2d 326, 329 (4th Cir. 1978); *Squillacote v. International Brotherhood of Teamsters*, 561 F.2d 31, 37 (7th Cir. 1977). In *J. P. Stevens Employees*, the Fourth Circuit stated:

> Here, although the Committee's allegations of denial of due process and rights of association and petition may not be

transparently frivolous, this ". . . does not warrant stopping the Board in its tracks." *Bokat v. Tidewater Equipment Company*, 363 F.2d 667, 672 (5th Cir. 1966). Any constitutional claims urged by the Committee can be properly reviewed by this court after termination of the lawful Board proceedings.

582 F.2d at 329. In light of these circuit court decisions, this Court must find that it lacks subject matter jurisdiction over the present case.

■ The inability of this Court to assume jurisdiction in this matter does not mean, however, that the plaintiffs will not be able to obtain judicial review of the NLRB's actions. Assuming that the Steelworkers win the representation election, the Company could obtain post-election review of the constitutional claim by refusing to bargain with the certified bargaining representative. Such a refusal would constitute an unfair labor practice under section 8(a)(5) of the Act. If the Steelworkers filed an unfair labor practice charge, the NLRB would hold a hearing. At this hearing, the Company could challenge any aspect of the representation election. If necessary, the Company could appeal an adverse final order arising from this hearing to the Court of Appeals pursuant to section 10(f) of the Act. Under the Third Circuit's recent decision in *National Labor Relations Board v. Interstate Dress Carriers, Inc.*, 610 F.2d 99 (3d Cir. 1979), however, the Association unilaterally could not obtain post-election review of the constitutional challenge. It must rely upon the employer to attack the election.

For the reasons stated above, NOW, this 5th day of November, 1979, IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendants' motion to dissolve the temporary restraining order, deny the preliminary injunction and dismiss the complaint for lack of subject matter jurisdiction is GRANTED. Furthermore, IT IS HEREBY ORDERED that the Clerk of Court release the plaintiffs' bond.