BAKERY, CONFECTIONERY AND TO-
BACCO WORKERS' INTERNA-
TIONAL UNION, LOCAL 6

v.

NATIONAL LABOR RELATIONS
BOARD, James M. Stephens, Chair-
man, Mary Miller Cracraft, Member,
Clifford R. Oviatt, Member

and

National Labor Relations Board, Region
4, Peter Hirsch, Regional Director

and

Stroehmann Bakeries, Inc.

Civ. A. No. 91–2813.

United States District Court,
E.D. Pennsylvania.

July 13, 1992.

Lynne P. Fox, Meranze and Katz, Phila-
delphia, Pa., for plaintiff.

Eric G. Moskowitz, N.L.R.B., Deputy
Asst. Gen. Counsel for Spec. Litigation,
Washington, D.C., Steven R. Wall, Morgan,
Lewis & Bockius, Stacy K. Weinberg, Phil-
adelphia, Pa., for defendants.

## MEMORANDUM

O'NEILL, District Judge.

## I. INTRODUCTION

This is an action arising under the Na-
tional Labor Relations Act ("Act"), 29
U.S.C.A. § 151 *et seq.* (1973). Defendant
National Labor Relations Board ("Board")
conducted a representation election on Jan-
uary 28, 1990 in which plaintiff Bakery,
Confectionery and Tobacco Workers' Inter-
national Union, Local 6 ("Union") lost by
one vote.[1] The Union brought this action
to compel the Board both to reverse its

---

**1.** Following the one year statutory bar for con-
ducting another representation election, 29
U.S.C.A. § 159(c)(3), a second representation
election was held on January 31, 1991. The
employees voted 52 to 33 against Union repre-
sentation. The Union did not file its complaint
until after the second election.

decision not to sustain the Union's challenge of a disputed ballot and to order the employer to recognize the Union as the bargaining representative. In addition, the Union alleges that the employer, Stroehmann Bakeries, Inc., breached the Stipulated Election Agreement entered into prior to the representation election. Both the Board and the employer moved to dismiss for lack of subject matter jurisdiction. I referred both motions to Magistrate Judge M. Faith Angell for Report and Recommendation which she has submitted. The Union has filed objections to the Report which both defendants have answered. I have reviewed the Magistrate's Report and Recommendation and the parties' submissions. For the reasons set forth below, I will approve the Report as supplemented by this Memorandum and adopt the Recommendations.

## II. BACKGROUND

Although the facts are set forth in detail in the Report, I will briefly summarize the factual background of the case. Plaintiff Union alleges that the list provided to it by the employer of employees eligible to vote in the January 1990 representation election contained the typed notation "Quit as of 12/23/89" next to the listing of "S. Gallagher." The Union alleges that, according to the list, Mr. Gallagher was ineligible to vote because he was not an employee at the time of the election. The Union therefore alleges that Mr. Gallagher should not have been permitted to vote. The Union alleges in the alternative that the employer provided it with faulty information because the employer listed Mr. Gallagher as "Quit as of 12/23/89" but "fail[ed] thereafter to advise the Union that the said employee may in fact be eligible to vote." Amended Complaint at ¶ 11. The Union therefore alleges that even if Mr. Gallagher had been eligible to vote, he should not have been permitted to vote.

Mr. Gallagher voted in the election and the Union challenged his ballot. The Regional Director of the Board found that Mr. Gallagher was an eligible employee and recommended that his vote be opened and counted. The Board affirmed. Mr. Gallagher voted against the Union. The addition of Mr. Gallagher's vote resulted in a tie vote between those voting for and against Union representation. Consequently, the Union lost the election.

## III. DISCUSSION

 Plaintiff Union concedes that district courts normally lack subject matter jurisdiction over challenges to Board representation proceedings. Plaintiff's Objections to the Report and Recommendation filed by the Honorable M. Faith Angell, U.S. Magistrate, at 3. The Magistrate's Report determines that the District Court lacks subject matter jurisdiction in this case because none of the exceptions to the normal rule apply here. Plaintiff objects to the Report's conclusion and argues that this Court has jurisdiction under the exception created by the Supreme Court in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), or under the exception created by the Court of Appeals for the Second Circuit in *Fay v. Douds*, 172 F.2d 720 (2d Cir.1949).[2] In addition, plaintiff objects to the Report's determination that the District Court lacks subject matter jurisdiction over the contract claim against the employer.

### (A) *Leedom v. Kyne*

Plaintiff Union objects to the Magistrate's finding that this Court lacks subject matter jurisdiction over Board representation proceedings. Plaintiff's Objections at 1. Plaintiff relies on *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, in which the Supreme Court carved out an exception to the normal jurisdictional rule that district courts lack subject matter jurisdiction over

---

**2.** In *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), the Supreme Court recognized another exception to the general rule prohibiting district court jurisdiction over Board representation proceedings. Plaintiff acknowl-

edges that this exception, which relates to international issues, is not applicable here. Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction at 6.

Board representation proceedings. *Id.* at 187–88, 79 S.Ct. at 183–84. In *Leedom v. Kyne,* the Court held that district courts could properly exercise jurisdiction over Board conduct that is "in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188, 79 S.Ct. at 183–84. The Court subsequently has held that the *Leedom v. Kyne* exception:

> is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law.

*Boire v. Greyhound Corp.,* 376 U.S. 473, 481, 84 S.Ct. 894, 898–99, 11 L.Ed.2d 849 (1964).

Plaintiff contends that the Report inappropriately characterized the Board's conduct as "an erroneous assessment of the particular facts." Plaintiff's Objections at 1 (quoting *Boire,* 376 U.S. at 481, 84 S.Ct. at 898–99); Report at 10. Plaintiff argues that the *Leedom v. Kyne* exception applies here because the Board's conduct was "in excess of its delegated powers and contrary to a specific prohibition in the Act." Plaintiff's Objections at 3 (quoting *Leedom v. Kyne,* 358 U.S. at 188, 79 S.Ct. at 184).

First, plaintiff claims that the Board failed to address the Union's objection to the employer's allegedly faulty compliance with its obligation under the Board's decision in *Excelsior Underwear, Inc.,* 156 N.L.R.B. 1236 (1966), to provide the Union with a list of employees eligible to vote in the representation election ("*Excelsior* list"). On the contrary, a review of the written Board decisions reveals that the Board considered the employer's compliance with the *Excelsior* requirement both in the Board Decision dated July 5, 1990 and in its Order Denying the Union's motion for reconsideration of that decision. *See* Motion of the National Labor Relations Board Defendants to Dismiss Amended Complaint for Lack of Subject Matter Jurisdiction or Alternatively Motion for Summary Judgment, Exhibits 3 & 4.

Plaintiff also contends that the Board failed to determine whether the alleged mistake in the *Excelsior* list of eligible employees reflected bad faith conduct by the employer. As the Board determined that the employer had substantially complied with the *Excelsior* requirement and therefore had not violated *Excelsior, id.* at Exhibit 3, the Board did not need to reach the question of whether the employer's actions were taken in good faith.

Third, plaintiff argues that the Board acted "in excess of its delegated powers and contrary to a specific prohibition in the Act," Plaintiff's Objections at 3 (quoting *Leedom v. Kyne,* 358 U.S. at 188, 79 S.Ct. at 184), by failing to ensure employer compliance with the *Excelsior* list, by failing to ensure that the employer continually supplemented the list and by failing to ensure that the employer prepared the list of eligible employees in good faith. Plaintiff's Objections at 2. Plaintiff does not cite any authority for its view that the *Leedom v. Kyne* exception to the normal jurisdictional rule should apply to alleged violations of obligations imposed by the Board's *Excelsior* precedent in addition to statutory obligations imposed by specific language in the National Labor Relations Act.

In my view, the narrow *Leedom v. Kyne* exception to the general rule that district courts lack jurisdiction over challenges to representation proceedings cannot properly be invoked in this case. The *Leedom v. Kyne* exception applies only to "specific prohibitions" of the Act. 358 U.S. at 188, 79 S.Ct. at 183–84. In decisions construing the scope of the *Leedom v. Kyne* exception, courts have examined whether the Board's actions contradicted specific language in the Act. The Court of Appeals for the Third Circuit has ruled that district court jurisdiction under *Leedom v. Kyne* exists where the Board "attempted [to] exercise [a] power that had been specifically withheld" from it in the statutory grant of power. *Firestone Tire & Rubber Co. v. Samoff,* 365 F.2d 625, 627 (3d Cir.1966) (quoting *Leedom v. Kyne,* 358 U.S. at 189, 79 S.Ct. at 184); *see NLRB v. Interstate Dress Carriers, Inc.,* 610 F.2d 99, 106 (3d

Cir.1979) (holding that under *Leedom v. Kyne* jurisdiction exists over challenges "addressed to the very existence of Board power, as opposed to its exercise of that power").[3]

The district courts within the Third Circuit have interpreted *Leedom v. Kyne* to mean that, in order for a district court to have jurisdiction, the Board must violate a statutory provision that is "clear and mandatory." *National Maritime Union v. NLRB*, 375 F.Supp. 421, 432 (E.D.Pa.1974), *aff'd*, 506 F.2d 1052 (3d Cir.1974), *cert. denied* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975). In *National Maritime*, the Court held that:

> [*Leedom v.*] *Kyne* and [*Boire v.*] *Greyhound* [376 U.S. 473, 84 S.Ct. 894] teach us that disagreement with the Board on a matter of policy or statutory interpretation is not a sufficient basis for assertion of jurisdiction ... [O]ur jurisdiction is properly limited to intervention in those cases ... in which the Board has violated a 'clear and mandatory' command of the Act.

*National Maritime*, 375 F.Supp. at 434 (citation omitted); *see U.S. Metal Co. Employees' Ass'n v. NLRB*, 478 F.Supp. 861, 863 (W.D.Pa.1979) (following *National Maritime's* construction of *Leedom v. Kyne*); *see also Nissin Foods (USA) Co. v. NLRB*, 515 F.Supp. 1154, 1158 (E.D.Pa. 1981) (holding in part that the *Leedom v. Kyne* exception applies only when the "Board violated a clear statutory mandate").[4]

Plaintiff does not allege that the Board violated a specific statutory provision.

Plaintiff makes the general allegation that the Board exceeded its authority under § 9(c)(1) of the Act by failing to ensure employer compliance with the *Excelsior* requirement that the Union be provided with a list of employees eligible to vote in the representation election. Section 9(c)(1) states that under certain circumstances the Board "shall direct an election by secret ballot and certify the results thereof." 29 U.S.C.A. 159(c)(1). The Court of Appeals for the District of Columbia Circuit has held that § 9(c)(1) does not specifically require compliance with *Excelsior* and that therefore the *Leedom v. Kyne* exception to the normal jurisdictional rule does not apply when a Union alleges Board noncompliance with *Excelsior*. See *UFCW Local 400 v. NLRB*, 694 F.2d 276, 278 (D.C.Cir.1982). In language which applies to this case as well, the Court held that:

> The *Excelsior* requirement does not specifically appear in the National Labor Relations Act. The rule was announced by the Board nearly two decades after enactment of the Act. Essential a tool as the rule may be to fair elections, it cannot reasonably be viewed as a statutory mandate violated by the Board's actions in this case.

*Id.* at 278–79.

Rather than "disregard[ing] a specific and unambiguous statutory directive," *UFCW Local 400*, 694 F.2d at 278, the Board in fact was exercising a power specifically granted to it under § 9(c)(1) of the Act. 29 U.S.C.A. § 159(c)(1). Indeed, both the Supreme Court and the Court of Ap-

---

**3.** *See also NLRB v. Frazier*, 966 F.2d 812, 815 (D.N.J.1992) (citing with approval *Interstate Dress Carriers*).

**4.** The Courts of Appeals for the First, Second, Fourth, Fifth, Sixth, Seventh, Ninth and District of Columbia Circuits have also employed a "clear and mandatory" test. *See e.g. Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1501 (D.C.Cir.1984) (holding in part that the *Leedom v. Kyne* exception applies only when the Board violates a "clear and mandatory" provision of the Act); *New York Racing Ass'n, Inc. v. NLRB*, 708 F.2d 46, 56 (2d Cir.1983), *cert. denied* 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983) (same); *International Union of Operating Engineers, Local No. 714 v. Sullivan Transfer, Inc.*,

650 F.2d 669, 680 (5th Cir.1981) (same); *Newport News Shipbuilding & Dry Dock Co. v. NLRB*, 633 F.2d 1079, 1081 (4th Cir.1980) (same); *Kentucky Society of Industrial Trades, Inc. v. NLRB*, 610 F.2d 454, 455 (6th Cir.1979) (same); *Teamsters, Chauffeurs, Helpers and Delivery Drivers, Local, 690 v. NLRB*, 375 F.2d 966, 972 (9th Cir.1967) (same); *Machinery, Scrap Iron, Metal & Steel Chauffeurs v. Madden*, 343 F.2d 497, 499 (7th Cir.1965), *cert. denied* 382 U.S. 822 (1965) (same); *Surprenant Manufacturing Co. v. Alpert*, 318 F.2d 396, 399 (1st Cir.1963) (same); *see also Dart v. United States*, 848 F.2d 217, 231 (D.C.Cir. 1988) (citing with approval *Council of Prison Locals*).

peals for the Third Circuit have interpreted this statutory provision to vest the Board with "wide discretion" over representation proceedings. *Wells Fargo Guard Services v. NLRB,* 659 F.2d 363, 370 (3d Cir.1981), relying on *NLRB v. A.J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 327–28, 91 L.Ed. 322 (1946) (holding in part that "Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees"). Although the Act allowed the Board to decide in *Excelsior* that the employer must provide the Union with a list of employees eligible to vote in a representation election, the Board created the requirement pursuant to its discretion under § 9(c)(1).

For the reasons above, I hold that the Board's actions were not an attempt to exercise a power that had been "specifically withheld" by the statute, *see Firestone Tire,* 365 F.2d at 627, nor were the Board's actions a violation of a "clear and mandatory" provision of the Act. *See e.g. National Maritime,* 375 F.Supp. at 434. Plaintiff's challenge is "addressed to the ... exercise of [Board] power" rather than the "very existence of [that] power." *Interstate Dress Carriers,* 610 F.2d at 106. Consequently, plaintiff's challenge to the Board's application of *Excelsior* does not meet the requirements of *Leedom v. Kyne* and thus does not justify departure from the normal jurisdictional rule prohibiting district court jurisdiction over Board representation proceedings.

(B) *Fay v. Douds*

■ Plaintiff also objects to the Report's refusal to consider the *Fay v. Douds,* 172 F.2d 720 (2d Cir.1949), exception to the general rule prohibiting district court jurisdiction over challenges to Board representation proceedings. In *Fay,* the Court of Appeals for the Second Circuit held that a district court could properly exercise jurisdiction over a party's claim that the Board violated the party's constitutional rights. *Id.*

Plaintiff correctly notes that the Report does not reach the merits of plaintiff's constitutional claim. The Report declines to follow *Fay* because the exception to the normal jurisdictional rule adopted by the Second Circuit in *Fay* has not been adopted by the Supreme Court or followed by the Court of Appeals for the Third Circuit. In addition, as the Report fully explains, the Court of Appeals for the Third Circuit and district courts within the Third Circuit have questioned the continuing validity of the *Fay* exception. Report at 13 (citing *Interstate Dress Carriers,* 610 F.2d at 107; *National Maritime,* 375 F.Supp. at 435; *Nissin Foods,* 515 F.Supp. at 1158); *see also E.I. DuPont de Nemours and Co. v. Federal Trade Comm'n,* 488 F.Supp. 747, 753 (D.Del.1980) and cases cited therein (stating "[t]he Second Circuit itself has questioned [*Fay's* ] continued validity, and every other Court of Appeals that has directly considered it has either rejected it entirely or limited its application").[5]

Plaintiff relies on a single case, *McCormick v. Hirsch,* 460 F.Supp. 1337 (M.D.Pa. 1978), in support of its argument that this Court should follow *Fay.* Plaintiff's reliance is misplaced. *McCormick* was decided prior to the Court of Appeals for the Third Circuit decision in *Interstate Dress Carriers,* in which the Court strongly criticized *Fay* as showing "little growth potential, either in the Second Circuit ... or elsewhere." 610 F.2d at 107. I therefore agree with the Report that I need not reach the merits of plaintiff's claim under the *Fay* doctrine because there is no reason to conclude that this exception is or will be recognized within the Third Circuit.

(C) *Contract Claim*

■ Plaintiff objects to the Report's conclusion that this Court lacks jurisdiction

---

**5.** After the Court of Appeals for the Third Circuit criticized the *Fay* doctrine in *Interstate Dress Carriers,* all subsequent decisions within the Third Circuit considering *Fay* questioned the doctrine's continuing validity and expressed doubt as to whether the Court of Appeals would adopt it. *See e.g. Nissin Foods,* 515 F.Supp. at 1158; *U.S. Metal,* 478 F.Supp. at 864.

over plaintiff's contract claim[6] in which plaintiff alleges that the employer breached the Stipulated Election Agreement. I am not persuaded by plaintiff's objection.

First, plaintiff argues that the Board failed to exercise jurisdiction because it never considered plaintiff's contract claim. Plaintiff's Objections at 5. On the contrary, a review of written Board and Regional Director decisions reveals that the Board did exercise jurisdiction over the contract claim. The Board decision dated July 5, 1990 reviews the record and adopts the Regional Director's Report and Recommendation. Motion of the Board Defendants to Dismiss Amended Complaint, Exhibit 3. The Regional Director's Report and Recommendation specifically considers compliance with the Stipulated Election Agreement. Plaintiff's Amended Complaint, Exhibit D.

Plaintiff also contends that "there exists a federal basis for recovery when a party breaches [a Stipulated Election Agreement] entered into for purposes of furthering [the] federal policy" of supporting free and fair representation elections. Plaintiff's Objections at 5. As the Report explains, a union and an employer may enter into a Stipulated Election Agreement as part of the representation election process. Report at 14. Because the Stipulated Election Agreement is part of the election process, disputes regarding the Agreement implicate representational issues and therefore fall within the exclusive jurisdiction of the Board. Report at 13–14; *see NLRB v. Paper Manufacturers Co.,* 786 F.2d 163, 167 (3d Cir.1986) (holding that "representation issues are matters relegated to the Board.... Representation issues may not be decided by contract, and thus may not be decided by an arbitrator.").

Plaintiff cites no authority for the proposition that an allegation of a breach of a Stipulated Election Agreement justifies departure from the normal rule prohibiting district court jurisdiction over Board representation proceedings. In the three cases that plaintiff relies on, *NLRB v. Frederick Cowan & Co.,* 522 F.2d 26 (2d Cir.1975); *NLRB v. Carlton Wood Products Co.,* 201 F.2d 863 (9th Cir.1953); *NLRB v. Standard Transformer Co.,* 202 F.2d 846 (6th Cir.1953), the Courts exercised jurisdiction pursuant to normal jurisdictional rules rather than pursuant to an exception to the rule prohibiting district court jurisdiction over Board representation proceedings. In *Frederick Cowan,* the District Court properly exercised jurisdiction under § 11(2) of the Act, which grants district court jurisdiction to enforce a Board subpoena under certain conditions. 29 U.S.C.A. § 161(2). In *Carlton Wood Products* and *Standard Transformer,* the Courts of Appeals exercised original jurisdiction pursuant to § 10(e) of the Act. 29 U.S.C.A. § 160(e). Therefore, because the existence of the Courts' jurisdiction in these cases was not based on the allegation of a breach of a Stipulated Election Agreement, these decisions offer no support to plaintiff's claim.

As discussed above, plaintiff concedes that the normal jurisdictional rule prohibits district court jurisdiction over Board representation proceedings. Plaintiff's Objections at 3. Plaintiff also acknowledges that three exceptions exist, only two of which are relevant here, *Leedom v. Kyne* and *Fay v. Douds.* Plaintiff's Memorandum of Law at 6. I have already declined to consider the applicability of *Fay.* Plaintiff does not argue that *Leedom v. Kyne* would apply to its contract claim. Nor does plaintiff point to any additional exceptions which might apply here. I will therefore adopt the Recommendation that plaintiff's contract claim be dismissed for lack of subject matter jurisdiction.

---

6. Plaintiff has not objected to the Recommendation that plaintiff's pendent state contract claim be dismissed.